# THE RUSSELL GRAIN COMPANY, Respondent, v. THE WABASH RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, October 2 and November 6, 1905.**

1. **PLEADING: Petition: Conclusions of Law: Inferences of Fact.** Every fact constitutive of the cause of action must be pleaded to warrant proof thereof, and a conclusion of law cannot take the place of such fact; but an ultimate fact which is a corollary from other facts is still a fact, and the means by which its existence is to be established need not be pleaded.

2. **COMMON CARRIERS: Pleading: Petition.** A petition against a carrier for delay in delivery is held sufficient since its reasonable construction means that the carrier unreasonably delayed putting the cars in the proper place for unloading after they reached their destination, which was its duty.

3. ———: **Duty to Deliver: Consignee's Assignee.** The consignee's assignee has the same right to require the carrier to reasonably deliver the goods that the assignee has, and the assignment does not release the carrier from its obligation.

4. ———: ———: ———: **Bill of Lading: Waiver.** The possession of a bill of lading is not indispensable to the transfer of the consignee's rights. Such transfer may be otherwise evidenced; and the carrier waives such formality when he verbally agrees with the consignee to deliver to his assignee and thereafter recognizes the assignee's ownership.

5. ———: ———: **Act of God.** A carrier is not liable for delays in delivery occasioned by unanticipated catastrophe; but if he fails to give notice of and contract against the delay so occasioned, he thereby agrees to deliver within a reasonable time except in case of subsequent occurrences.

6. ———: ———: **Order of Proof: Instruction.** When plaintiff proves ownership of goods and their delivery to the carrier for carriage to a certain point and the failure to deliver within a reasonable time, he makes his case and the carrier must show the delay was caused by some fortuitous happening that excuses the delay or that the shipper was informed that prompt delivery could not be made, and an instruction set out in the opinion is approved.

Appeal from Jackson Circuit Court.—*Hon. J. McD. Trimble,* Special Judge.

AFFIRMED.

*Geo. S. Grover, Frank P. Sebree* and *J. D. Wendorff* for appellant.

(1) Neither count of respondent's petition states a cause of action against appellant. Sidway v. Live Stock Co., 163 Mo. 342; Gamage v. Bushnell, 1 Mo. App. 416; Dezell v. Fidelity & Casualty Co., 176 Mo. 253; Nagel v. Railway, 167 Mo. 89; Burnham v. Boyd, 167 Mo. 185; Kerr v. Simmons, 82 Mo. 269, 275; Knapp, Stout & Co. v. St. Louis, 156 Mo. 343; Verdin v. St. Louis, 131 Mo. 26. (2) It is the well-established law of this State that every substantial fact which the plaintiff in order to recover, must prove, he must also allege so that any issue can be made thereon. Sidway v. Live Stock Co., 163 Mo. 342; Verdin v. St. Louis, 131 Mo. 26; Story v. Ins. Co., 61 Mo. App. 534; M'fg. Co. v. Jones, 60 Mo. App. 219; Pier et al. v. Heinrichoffen et al., 52 Mo. 333. (3) The court should have sustained appellant's demurrer to the respondent's evidence. In order to make appellant a common carrier for hire of the oats in question, it must have received some compensation for its service in transporting the cars to its team track from where they stood when respondent purchased the oats. Hutchinson on Carriers, secs. 47, 57 and 117; 5 Am. and Eng. Ency. Law (2 Ed.), 158; 6 Am. and Eng. Ency. Law (2 Ed.), 237. (4) When Thresher chose to accept the oats in the railroad yards, which he did when he sold them to be delivered to respondent in the yards, appellant's contract of shipment, if it ever had any, terminated and its liability as a common carrier ceased, and the only way its liability as a common carrier of the oats in question could be renewed was by a new contract of shipment, either express or implied, upon a sufficient

consideration, entered into by it and respondent. 5 Am. & Eng. Ency. Law (2 Ed.), 214; Stone v. Waitt, 31 Me. 409. (5) There was no contract of shipment whatever entered into between appellant and respondent for the transportation of the oats in question from where they were when respondent bought them, to the appellant's team track. (6) That appellant was no more than a gratuitous bailee or mandatory of the oats in question there can be no doubt, and it was therefore only liable for gross negligence. Hutchinson on Carriers, secs. 15, 16, 44, 57, 58. (7) The delay, if any, was unavoidable. Ballentine v. Railway, 40 Mo. 491; Dawson v. Railway, 79 Mo. 296; 5 Am. & Eng. Ency. of Law (2 Ed.), 255; Grier v. Terminal Co., 84 S. W. 158. (8) Appellant's complete defense was admitted. May v. Crawford, 150 Mo. 504; Reichenbach v. Ellerbe, 115 Mo. 588; Holland v. Railroad, 105 Mo. App. 117; Carter v. Railway, 156 Mo. 636; Jeans v. Morrison, 99 Mo. App. 208; Jackson v. Hardin, 83 Mo. 175; Powell v. Railroad Co., 76 Mo. 80; State to use v. O'Neill, 151 Mo. 67; Asphalt Co. v. Transit Co., 102 Mo. App. 469. (9) Instruction 3, given for respondent, is also erroneous. This instruction entirely ignores appellant's complete defense. Lesser v. Railway, 85 Mo. App. 326; Linn v. Bridge Co., 78 Mo. App. 111; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Shoe Co. v. Lisman & Ramsey, 85 Mo. App. 340; Welsh v. Railroad, 20 Mo. App. 477; Lumber Co. v. Tie Co., 87 Mo. App. 167.

*Sherman & Fletcher* for respondent.

(1) The relation of common carrier of goods for hire existed between the respondent and the appellant with respect to the goods in question. (2) The court properly overruled appellant's demurrer to respondent's evidence. (3) All the evidence tends to prove the reasonableness or unreasonableness of the time consumed in switching the said cars to the team tracks, and all of

which was properly submitted to the jury for the purpose of ascertaining what was a reasonable time. Sloop v. Wabash, 93 Mo. App. 608.

JOHNSON, J.—On July 21, 1903, defendant, a common carrier, received at Council Bluffs, Iowa, two cars of oats which it undertook, for a consideration, to transport to Kansas City and there deliver to R. J. Thresher, the consignee named in the bill of lading. On the morning of the 28th inst. defendant notified consignee, who was in the grain business at Kansas City, of the arrival of the cars. Following usual custom defendant had placed them, on arrival, upon a side track in its yards in Harlem across the river, awaiting inspection by the grain inspector, and orders for disposition by the consignee.

Delivery of grain billed to Kansas City was customarily made either by turning the cars over to a connecting carrier at the yards in Kansas City, or by placing them upon a "team track" in said yards, for unloading into wagons. After the inspection of the oats the consignee was furnished by the inspector with a sample from each car, and on the same day, July 28th, sold both carloads, by sample, to plaintiff, another grain dealer in Kansas City. Shortly after the sale was consummated Thresher and plaintiff both telephoned defendant's agent in charge of its Kansas City freight office, notifying him of the sale and instructing him to have the cars switched upon the team track as soon as possible, for unloading. This he agreed to do without objection or question of any kind. Plaintiff states that the agent agreed to have the cars on the team track by ten o'clock the following morning (the 29th inst.), but the latter, though admitting his unconditional promise to deliver them as requested, denied that he agreed to have them switched in the time stated by plaintiff. Although repeatedly urged by plaintiff to switch the cars sooner, they were not placed upon the team track until August

6th and 10th respectively. They were, however, on those dates delivered to plaintiff without any question of its right to receive them, and without extra charge for switching. The market value of the oats steadily declined from July 29th to the date of delivery, and this suit was brought to recover the damages sustained thereby upon the ground that defendant failed to deliver the oats within a reasonable time. It appears that usually the time required by defendant in switching cars from the Harlem yards to the team track was from twenty-four to thirty-six hours after receiving the order from the consignee.

Plaintiff recovered judgment and defendant appealed.

The first error assigned relates to the sufficiency of the allegations in the petition to constitute a cause of action. In the first count it is charged "that the defendant is and was, at all such times, a common carrier of goods for hire, owning and operating a line of railroad extending in and from the city of Kansas City, Jackson county, Missouri, and elsewhere, and that as such common carrier of goods for hire, it is and was the duty of said defendant to safely convey, transport and deliver, within a reasonable time, any and all goods accepted for shipment. Plaintiff says that it is and was the further duty and custom of this defendant to maintain a place in Kansas City, Missouri, where all consignees and this plaintiff in particular might unload freight or goods with some degree of convenience and that such place is usually designated a team track. Plaintiff further says, that on or about July 28, 1903, the said defendant at Kansas City, Missouri, was in possession of 47,680 pounds of oats contained in car No. 61463 N. Y. C. (as a common carrier of goods for hire), belonging to plaintiff. Plaintiff further says that on or about July 28, 1903, plaintiff instructed this defendant to deliver said oats to defendant's team track but that said oats were not delivered until on or about August 10, 1903." The

second count, in substance the same as the first, seeks damages on account of the delay in the delivery of the remaining car, which it is stated was placed on the team track on August 6th.

Defendant says the statement alone that it was in possession, as a common carrier of goods for hire, of a car of oats belonging to plaintiff, is not the affirmation of a fact but a conclusion of law. Every fact constitutive of the cause of action must be pleaded to entitle the plaintiff to adduce proof thereof. A conclusion of law cannot take the place of constitutive facts for the reason that it is a mere consequence following the existence of predicative facts, and therefore cannot even tend to establish that which is necessary to call it into action. But defendant evidently has fallen into the common error of mistaking an inference of fact for a conclusion of law. That an ultimate fact upon which may rest the whole fabric of the cause of action pleaded is not susceptible of direct proof, but must result as a corollary from other facts, does not make of it anything but a fact and certainly does not call for the statement in the petition of the means by which its existence is to be established. Its incorporation into the statement of elemental facts apprises the defendant of the nature of the relation it bears to the cause of action asserted, and the character of the proof necessary to sustain or overthrow it, and this complies with the requirements of good pleading. It follows that the averments under consideration must be held to be the statement of constitutive facts and not conclusions of law.

Nor do we think the petition is deficient in the allegations relating to the obligation of the defendant to deliver the oats upon the team track. Reasonably construed, the language employed means that defendant unreasonably delayed putting the cars in the proper place for unloading after they had reached their destination. It is the duty of the common carrier not only to safely carry property to its destination, but to take it to the

place, provided at that point, for delivery to consignees of property of its kind, and there place it in a position of accessibility.

Defendant insists that under the facts in evidence it was under no duty to plaintiff to take cars from the Harlem yards to the team track, for the reason that plaintiff had no contract with it. A sale of the oats by the consignee to the plaintiff, while they were in the yards at Harlem, carried with it, as an incident, the rights the former had under the contract of affreightment. To say otherwise would be to take a property right from the consignee and give it to the carrier. It is conceded that had Thresher remained the owner of the oats, defendant was under duty to place the cars upon the team track at his direction, without additional charge. No reason is apparent for releasing the carrier from the performance of this or any other duty under its contract by the fact of the sale of the property while in transit.

Nor is any merit to be found in the suggestion that plaintiff's right to require the defendant to carry out its contract is affected by the failure to prove an assignment of the bill of lading by the consignee to plaintiff. The possession of this instrument, by plaintiff, duly assigned would have been an evidence of plaintiff's ownership and right to possession of the property, and of its right to be substituted as consignee, but it was not indispensable to the transfer of any or all of the rights mentioned. Such transfer could have been otherwise evidenced. Whatever may have been the right of the defendant to require the production and surrender of the bill of lading before delivering the oats, it is not now in a position to base any claim upon such right. From the time of the announcement of the sale it recognized plaintiff as the rightful owner of the property, and made delivery to him without requiring further proof of the transfer of title than a verbal statement of the vendor and vendee, and without asking for the production and

surrender of the bill of lading. The uncontradicted evidence of both vendor and vendee is that the sale was made on July 28th. Under these facts the point is technical, not substantial, and will be disregarded.

The court instructed the jury on behalf of the plaintiff as follows: "You are instructed that it was the duty of the defendant railway company to transfer and deliver the property in question, to the place designated by the plaintiff, within a reasonable time and without unnecessary delay, and if you find from the evidence that the defendant did not so transport and deliver plaintiff's property to the team track, designated by plaintiff, within a reasonable time and without unnecessary delay, then your verdict must be for the plaintiff for the difference in the market value in the property when it should have been delivered, and the market value of the property when it actually was delivered." This instruction is criticized upon the ground that it ignores a substantial defense offered by the defendant. The defense referred to is pleaded in the answer and is supported by evidence. It is in substance this: On June 1, 1903, and for some days thereafter, a flood of unusual and extraordinary violence swept over the bottoms of the Missouri and Kansas rivers. Defendant's yards at Kansas City and Harlem were inundated and so injured that it was impossible to operate them at all until after the 18th of June, and from then on for a period of several months, partly on account of the demoralized physical condition of the tracks and other facilities, and partly because of the congestion of business resulting from this abnormal condition defendant was greatly impeded and delayed in making deliveries of freight to its patrons. It is shown quite conclusively that the delay suffered by plaintiff in the moving of his cars of oats from Harlem to the team track was no more than that endured by every other shipper, and was not unreasonable under the conditions then prevailing.

It is well settled that a common carrier is not liable for delays in the transportation of freight occasioned by the act of God or any other unusual and unanticipated catastrophe, or even for those caused by sudden influx of business. This rule applies when the cause of delay arises after the property is received by the carrier for shipment. But when, at the time the shipper offers freight to the carrier, conditions exist that will prevent the delivery within a reasonable time (which means the time usually consumed under ordinary circumstances), different principles control. The carrier is not expected to perform the impossible, and may refuse to accept freight unless the shipper will agree to suffer delay in delivery made necessary by the extraordinary conditions. But the acceptance of goods for shipment without such stipulation, or without notifying the shipper of the fact that they cannot be promptly delivered, is tantamount to an assurance that they will be delivered within a reasonable time, except for the intervening of excusing causes of subsequent occurrence.

The burden of proof is upon the owner of the goods to show their delivery to the carrier for delivery at a certain point, and the failure of the latter to deliver them in a reasonable time, under ordinary circumstances. The burden then devolves upon the carrier to show that the delay was caused either by some fortuitous happening that excuses delay, or that the shipper was informed, before delivery to the carrier, of the fact that prompt delivery could not be made. It was not shown that any notice of this kind was given to the shipper in this case, but to the contrary it appears that the shipment was accepted for delivery in the ordinary course of business. Defendant failed in its proof, and the fact of the demoralization of its yards at Kansas City, known by defendant to be at its height when the shipment was received, is no excuse for the delay. The instruction under consideration will be sustained because of this failure of proof. Other points are made but we deem none

of them of sufficient importance to call for special notice. The case was fairly tried and submitted. Judgment is affirmed. All concur.