JOHN H. CRONAN, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. **CARRIERS: Failure to Furnish Cars: Unusual Increase in Business: Duty to Notify Shipper.** In a suit against a railroad company for damages for failure to furnish cars for the shipment of logs, the defense of the company, besides a general denial, was that an unusual and· unanticipated increase in business prevented defendant from furnishing cars it otherwise could have furnished. *Held*, that if the increase in business prevented supplying the cars requested by plaintiff, it became the duty of the company to notify the shipper of its inability to furnish the cars so the shipper could govern himself accordingly. In this case it appeared that the agent of the defendant continuously promised cars but that few were furnished; that the shipper hauled large quantities of logs to the yards that were not shipped and which were damaged by the delay. The judgment for plaintiff is affirmed.

2. ———: ———: **Liability of Carrier.** A common carrier is under a legal duty to supply patrons with cars to promptly move such freight as may be expected, according to the usual volume of business offered for shipment, and if timely demands are made for cars, and if a carrier fails to furnish them without a lawful excuse for the failure, he is answerable for the proximate damage sustained by the shipper.

3. ———: ———: **Unusual Increase in Business: Duty to Notify Shipper.** It is a lawful excuse in case of a failure to furnish cars for the shipment of freight for the carrier to show that when the goods were offered there was a sudden, unusual and unexpected amount of business and on account thereof it was unable to handle the shipper's product without delay, but in fairness to the shipper when that condition exists the carrier must notify the shipper of the situation.

4. ———: ———: ———: **Accepting Shipments Beyond Carrier's Line: Duty to Notify Shipper.** A sudden influx of business might justify a carrier in refusing to accept business for points beyond the lines of its road, and in holding its own cars on its own lines during such period, but in such a case it would be the carrier's duty to notify the shipper of the situation. Having

accepted the shipment to the foreign points or having promised to furnish cars for such shipment, the carrier would be liable for the failure to transport.

5. **EVIDENCE: Carriers: Failure to Furnish Cars: Sudden Increase in Business: Car Shortage During Prior Years.** In a suit against a railroad company for failure to furnish cars for the shipment of logs, the defense being a sudden and unusual increase in business on the company's line, the plaintiff was permitted to show by other shippers that a car shortage existed on defendant's road in the district in which plaintiff was shipping during the years immediately before the offer of the shipments in question. *Held,* that the evidence was admissible as tending to overcome the defense of an unusual volume of traffic.

6. ——: ——: **Sufficiency of Evidence of Contract to Furnish Cars.** In a suit against a carrier for failure to furnish cars for the shipment of logs, the evidence on the question of whether or not the carrier had agreed to supply the cars is examined and held sufficient as tending to show an agreement on the part of the carrier to furnish the cars.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1) There never was an agreement on the part of the defendant to furnish plaintiff cars, and the court erred in so finding. Lucky v. Railroad, 133 Mo. App. 589; Railroad v. Arnett, 88 S. W. 448; Railroad v. Cannington, 110 S. W. 965; Gann v. Railroad, 65 Mo. App. 670; Cangas v. Mfg. Co., 37 Mo. App. 307; Egger v. Nesvitt, 122 Mo. 667; Embry v. Hargadine, 127 Mo. App. 383; Mfg. Co. v. Lumber Co., 115 Mo. App. 114; Batavia v. Railroad, 126 Mo. App. 13; Campbell v. Handle Co., 117 Mo. App. 19. (2) Plaintiff's shipments were beyond the line of defendant's road, and it was not unlawful for it to refuse to allow its cars to be sent to distant points on other lines, and especially, so when the

149 App—25

business of its own line was sufficient to keep its cars occupied. Riddle v. Railroad, 1 Reports 1888, 693; Railroad v. State, 120 S. W. 1038; Parks v. Railroad, 10 Reports 47; Railroad v. Myrick, 107 U. S. 102; 27 Law Ed. 325. (3) In the absence of a contract the plaintiff was not entitled to recover because the evidence showed a sudden and unexpected increase of business, and to meet it defendant was called upon to provide cars not possible for it to obtain in time; and the cars required were to be of a particular type, and be used to meet a demand for shipments beyond its own line. The authorities all hold that a shipper has no cause of action against the carrier where the default of the carrier arises in cases of this kind. Ballentine v. Railroad, 40 Mo. 491; Hoffman Co. v. Railroad, 119 Mo. App. 501; Dawson v. Railroad, 79 Mo. 296; Faulkner v. Railroad, 51 Mo. 311; Pruitt v. Railroad, 62 Mo. 527; State v. Railroad, 90 N. W. 309; State v. Railroad, 101 N. W. 23; Strought v. Railroad, 87 N. Y. S. 30; 4 Elliot on Railroads (1 Ed.), sec. 1470; Moore on Carriers, 105. (4) The court erred in permitting the plaintiff, in rebuttal, to show by witnesses Stout, and others, that they had trouble to get cars at various stations other than James, in Pemiscot county in 1904, '05, '06 and 1907. Connor v. Railroad, 181 Mo. 397; Newcomb v. Railroad, 182 Mo. 687; Van Ravenswaay v. Insurance Co., 89 Mo. App. 73; Haycraft v. Grigsby, 88 Mo. App. 354; Van Edwards v. Asphalt Co., 92 Mo. App. 221; Globe v. Kansas City, 148 Mo. 470; Williamson Co. v. Corset Co., 70 Mo. App. 424; State v. Clawson, 30 Mo. App. 139; St. L. Gaslight Co. v. Insurance Co., 33 Mo. App. 348; Hayes v. Railroad, 15 Mo. App. 584; Coale v. Railroad, 60 Mo. 227; Huston v. Forsythe, 56 Mo. 416; Stout v. Columbia, 118 Mo. App. 439; Glasgow v. Railroad, 191 Mo. 347; Council v. Railroad, 124 Mo. App. 432.

*Shepard & Shepard* for respondent.

(1) The agent and the trainmaster both told plaintiff to accept the order for the poles and piling, and that they would furnish him the cars on which to ship same. This has ever been held as a contract on the part of the transportation company to furnish cars. Meriwether v. Railroad, 128 Mo. App. 647; Baker v. Railroad, 91 Mo. 152; Fountain v. Railroad, 114 Mo. App. 676; Pruit v. Railroad, 62 Mo. 527; Guinn v. Railroad, 20 Mo. App. 459; Railroad v. Hodge, 30 S. W. 829; Railroad v. House & Watkins, 88 S. W. 1110; Railroad v. Ozier, 110 S. W. 593; Hoffman Co. v. Railroad, 119 Mo. App. 495. (2) The law imposes the obligation upon a railroad to have and to furnish sufficient facilities for the reasonably prompt transportation of goods tendered for carriage, and they are liable for failure to transport promptly whether their failure is due to want of facilities or to a captious refusal to carry. Quinn v. Railroad, 20 Mo. App. 459; Russell v. Railroad, 114 Mo. App. 488; McFall v. Railroad, 117 Mo. App. 481; Ficklin v. Railroad, 117 Mo. App. 221; Hoffman Heading Co. v. Railroad, 119 Mo. 495.

GRAY, J.—This is a cause instituted in the Pemiscot County Circuit Court to recover damages from defendant as a common carrier, for failure to furnish plaintiff cars on which to ship poles and piling placed for shipment at James Switch, on defendant's railroad. Defendant appealed from a judgment for the plaintiff.

Plaintiff alleges in his petition that from the month of October, 1906, to the month of March, 1907, he was engaged in the pole and piling business in said county; that during the time above mentioned, he placed at the station of James, large quantities of cypress poles and piling to be shipped over defendant's railroad, all of which said poles and piling were placed at the usual place at said station of James, for receiving such freight

by defendant for shipment; that plaintiff tendered said poles and piling to defendant for transportation, under the terms such freight was handled by defendant, and offered to pay to defendant the regular and customary charges for the transportation of same; that he frequently requested and demanded of defendant to ship said poles and piling, as aforesaid, and defendant promised to furnish plaintiff the cars so requested by him on which to ship his freight; that during said time he was prepared to handle, load and ship four cars of said poles and piling per day, and requested that number of cars from the defendant; that the defendant wholly disregarded its duties in the premises and failed to furnish said cars so requested by plaintiff, by reason of which failure on the part of the defendant to furnish said cars for the plaintiff, large quantities of poles and piling accumulated at said station, awaiting cars, and on account of the delay and failure of defendant to furnish said cars, said poles and piling became damaged; that during the time said poles and piling were lying at the station waiting for shipment, there was a material drop in the price of the same, and if defendant had furnished the cars as requested and as it agreed to do, plaintiff would have been able to have sold the poles for the sum of $4,684.38 more than he afterwards realized for the same.

Plaintiff further stated that during said time he was required to maintain and keep at said station, a foreman and crew of men ready to load cars when the same were furnished, and that on account of defendant's failure to furnish the cars, he was to the additional expense of $1275 for such purposes.

The answer in addition to a general denial, affirmatively alleged that defendant furnished plaintiff at the station all the cars necessary for the transportation of its average business with him at that station, and distributed to said station its just and due proportion of cars of the kind requested and required to do business

at that station, and all that it could spare, considering the average and usual business that was to be done at that station, and if the plaintiff was deterred in shipping the logs and piling alleged in the petition, it was because of an unusual pressure of business at that station, and out of the usual order, and beyond the average and ordinary amount of business at that station, together with an unusual pressure of business and a sudden influx thereof on defendant's railroad, a status which prevented defendant from supplying cars at all the stations along its railroad to meet the emergency, and that this sudden influx and unusual pressure of business was not anticipated and could not be foreseen in time to provide for that condition; that during the period complained of there were heavy rain falls which caused damage to defendant's tracks and road, and on account thereof, defendant was unable, a part of the time, to supply the cars it otherwise would have furnished. The reply was a general denial.

Plaintiff offered testimony tending to prove that from the month of October until late in the spring of 1907, he continually made requests for cars, and that the defendant's agents promised to furnish same; that he ordered four cars a day and got about two a week; that he had teams hauling poles and piling to the station, and at the time he was placing the poles and piling for shipment at the station, the prices were good and he had a sale for his entire product; that he used all the cars he could get and was prepared to load all the poles and piling he had at the station, if defendant had furnished him cars; that there remained on the ground undisposed of, poles and piling of the value of $5855.47; that he disposed of the same to the best advantage and his damages exceeded the amount of the judgment.

As there is some dispute concerning the promise and agreement of the agents of the defendant concerning the cars, we set forth the followng testimony given by the plaintiff:

"I took the matter of furnishing cars up with the trainmaster; met him and talked with him about this matter two or three times a month, and sometimes oftener. He always promised me cars and usually would help me right at the time. I talked about this matter to Mr. Brundige, the agent, and to Mr. Turner, the trainmaster, and to Mr. Wright after he succeeded Mr. Turner. They continually made me the promise to furnish cars; sometimes they would say, 'We can't do it to-day, but in a few days we can give you all you need—keep you going.' At all times they agreed to furnish me cars on which to ship this stuff. I talked to the agent and the trainmaster about the condition of the poles and piling, that they were being ruined. Talked to the agent about the cars nearly every morning; and when I would talk to him he would say, 'All right, all I can I will try to help you out.' Mr. Turner said, 'I am going to keep you in cars, give you one every day.' I would speak to the station agent at Hayti about cars, and he would tell me he would give me cars, promised me cars from time to time, and I would go to him and he would say, 'I can't do anything for you to-day, possibly not to-morrow; we haven't anything on the yard now in sight.' They did not tell me they were short of cars. They would tell me they could not furnish cars to-day, they didn't have any to-day, but they would almost invariably name a day, particularly the trainmaster. The agent would not name the day so much as the trainmaster. I explained to Mr. Turner my condition there, and the expense and cost I was put to by not being kept with cars; it would cause me to hold a crew there almost continually, from the fact if I let the crew go and they placed a car or two for me, I had to get out and get a new crew, and that delayed the movement of the car as well as delayed the shipment, and was expensive to me. Turner said he realized my position and he was going to put me in the switch limit, and see if he couldn't give me all I wanted; said he was going to

take care of me, and he ordered the agent there to take care of me; promised he would furnish me cars. I talked to Mr. Turner and Mr. Elliott, the superintendent; they promised me cars, said they would give me cars; I talked to them in regard to whether I should take an order, if I dared to take an order."

In behalf of the defendant, Mr. Hall, a trainmaster of the defendant, testified that there was a sudden increase in the business of the company, and that the company hesitated to permit its own cars to be loaded with freight to be shipped out over other lines and into other states; that they preferred handling such freight with foreign cars, but he did not recall any refusal of the company to load its own cars for foreign shipment.

The defendant offered other testimony tending to prove that there was a sudden and unexpected demand for cars. And without setting forth all of this testimony, it was sufficient to submit the defenses set forth in the answer, to the jury.

In rebuttal, the plaintiff was permitted to offer testimony by different shippers in that district, that all during the years of 1905 and 1906, there was a shortage of cars, and that the defendant did not furnish cars during those years sufficient to handle the timber business in that part of the country.

The plaintiff asked no declarations of law, and the court gave for the defendant declarations of law to the effect that defendant was only required to supply itself with a reasonably sufficient number of cars and equipment to transact the usual and ordinary business along the line of its railroad, and not required to anticipate an increase of shipping business beyond the extent of its ordinary and usual business; and if the defendant did make provision for said shipment along the lines of its railroad by providing a reasonable number of cars and equipment, to meet the same, but there was an increase of such business, and of such a kind and nature that the defendant could not have reasonably anticipated it, and

if the defendant did provide the plaintiff a reasonably proportion of the cars it could supply of the kind required to carry his logs, and did not discriminate against him, then the plaintiff was not entitled to recover.

The court also submitted to the jury the question of damage to defendant's road by reason of storms, etc. Without setting forth all the declarations of law, it may be said that they clearly and fairly submitted to the jury the defenses set forth in the defendant's answer.

The court refused the following declaration of law: "The court further declares the law to be that under the evidence in this cause no contract has been proven that the defendant contracted and agreed with the plaintiff to furnish him sufficient cars to ship his lumber set forth in the petition as alleged therein."

The duty of the carrier is clearly declared by Judge PHILIPS in Guinn v. Railroad, 20 Mo. App. 453, as follows: "It is the duty of the carrier when applied to for cars, to advise the shipper of the situation and circumstances which would likely occasion any unreasonable delay. 'He is not bound to provide in advance for extraordinary occasions, nor for an unusual influx of business; neither will he be excused for not being provided with a sufficiency of conveyances and other means for transportation of that which he may reasonably expect to be offered. And while an unusual press of business may justify his refusal to accept the goods which may be offered, if, having provided himself with reasonable facilities, he finds it impossible, from previous engagements, to commence its shipment according to the usual and regular course of business, yet if he do accept the goods without notice to the shipper of the circumstances, and obtaining assent, either express or implied, to the delay, he becomes bound to carry the goods within a reasonable time, and he will not be heard to say that his delay was caused by such contingency. He must, at his peril, inform the shipper of the necessary delay.

"The defendant, so far as disclosed by the abstract of the record, did not advise the plaintiff of any of the hindrances to a shipment, at the time he tendered the hogs, nor when defendants received them in its pens." To the same effect are Yazoo & M. V. R. R. Co. v. Blum, 88 Miss. 180, 40 So. 748; Faulkner v. Railroad, 51 Mo. 311; Pruitt v. Railroad, 62 Mo. 527; Toledo, W. & W. R. Co. v. Lockhart, 71 Ill. 627; Dawson v. Railroad, 79 Mo. 296; Russell Grain Co. v. Railroad, 114 Mo. App. 488, 89 S. W. 908; Texas & N. O. R. Co. v. Kolp, 88 S. W. 417, 6 Cyc. Law & Proc., p. 444; Helliwell v. Grand Trunk R. R. Co., 7 Fed. 68; DiGirogio Importing & S. Co. v. Pennsylvania R. Co., 65 Atl. 425, 8 L. R. A. 108.

From the testimony of the plaintiff above quoted, it clearly appears that the agents of defendant to whom plaintiff had a right to apply for cars, informed him to go ahead and get his timber out of the forests and that cars would be furnished him to take the same to market. There is no testimony in the case that at any time was he notified that the company would be unable to furnish him any cars on account of an unusual and unexpected press of business, but on the contrary, it is clearly shown that it was held out to the plaintiff that the defendant would be able to supply him with the cars. Under such circumstances, the authorities are quite unanimous that in an action by the shipper for damages for the failure to deliver cars, it is no defense to show an unusual, sudden and unexpected press of business. [Authorities above cited; also note to Yazoo & M. V. R. Co. v. Blum, 10 L. R. A. N. S. 432.]

The justice in determining this case by the above rule, is easily shown. The plaintiff had his timber standing in the forests. In that condition it was not subject to damage, and would have remained there undoubtedly for quite a period of time without loss. When it was cut and delivered on the yards for shipment, if not removed promptly, it would become greatly damaged and

unfit for the purposes for which it was intended. He applied to the defendant to ascertain if he could have cars to handle the same, and was advised that the company could and would ship his timber. With this understanding, he cut the timber, hauled it and placed it in the defendant's shipping yards. After he had commenced to do so, he discovered that he was not getting as many cars as he needed. He again applied to the defendant from time to time and was told he would be furnished at least one car a day, and that the company would take care of his product. There was not a word said to him, so far as the testimony in this case shows, that the company's rolling stock was insufficient to handle the sudden, unusual and unexpected rush of business, and that the company would be unable, on account of this rush of business, to furnish him cars, but he was promised that the cars would be furnished, and under these promises, he went ahead and delivered at the defendant's shipping yards his poles and piling, and the company failed and neglected to furnish him cars, and on account thereof, his timber placed in the shipping yards for shipment, became damaged.

If the company had notified him of the matters now set up in its answer, he would not have been justified in going ahead and getting out his timber, and if he had done so, it would have been at his own peril. But after permitting him to go ahead and get out his timber under a promise to furnish him cars, the company should not now be permitted to urge, as against him, the defense that it was unable to furnish him cars by reason of a sudden, unusual and unexpected rush of business.

The action of the court in permitting plaintiff to prove by other shippers that during the years 1905, 1906 and 1907, there was a car shortage on defendant's road in the district from which plaintiff was shipping, is approved in Shoptaugh v. this defendant, 126 S. W. 752. That case is not only against this defendant, but it was an action for damages for failure to furnish cars to

ship logs in 1907, in the same district from which the plaintiff in this case was shipping logs, and the court held the testimony admissible to overcome the defense made in that case as here, of an unusual volume of traffic.

The defense is made that on account of a demand for the use of defendant's cars, and inasmuch as plaintiff was shipping his poles and piling to points beyond the line of defendant's road, that it was justified in refusing him cars for that purpose, and in giving preference to shippers to points on defendant's own road.

A sudden influx of business might justify a carrier in refusing to accept business for points beyond the lines of its road, and in holding its own cars on its own line during such period. [Gulf, C. & S. F. Ry. Co. v. State, 120 S. W. 1028; Riddle, Dean & Co. v. Railroad, 1 Interstate Commerce Com. Reports (Lawyers Co-op. Ed.) 688; Parks v. Railroad, 10 Interstate Commerce Com. Reports (Law Co-op Ed.), 47.]

This rule, however, is generally applied in an action where the carrier has been sued for a penalty provided by statute. [Illinois C. R. Co. v. Bundy, 97 Ill. App. 202.] But it may be said that it is also applicable as a defense in suits for damages for failure to furnish cars. Accepting this as the correct doctrine, is the defendant under the evidence in this case, entitled to that defense? In order to make such a defense it seems to us that at the time the shipper was delivering his property to the carrier, if the carrier was not going to furnish cars to ship it because beyond its own line, the attention of the shipper should have been called to that situation, so that he might govern himself accordingly. [Peterson v. Case, 21 Fed. 885; Pruitt v. Railroad, 62 Mo. 527; Toledo, W. & W. R. Co. v. Lockhart, 71 Ill. 627; Dawson v. Railroad, 79 Mo. 297; Russell Grain Co. v. Railroad, 114 Mo. App. 488, 89 S. W. 908; Yazoo & M. V. R. Co. v. Blum, supra; 6 Cyc. Law & Proc., p. 444; Helliwell

v. Grand Trunk R. Co., 7 Fed. 68; Guinn v. Railroad, 20 Mo. App. 459.]

The declarations of law given by the trial court show that the court was more liberal with the defendant in applying the law of the case than the above authorities justify. The court did not take into consideration the fact, as testified to by plaintiff, that at no time did the defendant notify him it could not furnish the cars on account of the reasons now assigned, but on the contrary, encouraged him in getting out his timber and promised to furnish the cars to ship it. But the court declared the law to be that if there was a sudden and unexpected increase in defendant's business, or if high water delayed the defendant in handling its business, it was not liable, whether it notified the plaintiff of this condition or not.

The court, however, did refuse to declare as a matter of law, that the evidence was insufficient to prove that defendant agreed with the plaintiff to furnish him sufficient cars to ship his lumber. This was the only declaration of law asked by the defendant which was refused by the court except a demurrer to the evidence.

We do not believe the court erred in refusing the declaration of law. There was evidence, uncontradicted, that the defendant agreed to furnish him at least one car a day, and several times told him that cars would be furnished to ship his timber, and when he inquired concerning the situation and notified the defendant that he was keeping a large crew of men on hands and at a large expense in order to have them ready to load cars, the defendant notified him that the cars would be furnished. It seems to us that this was some evidence of an agreement to furnish cars, and the court was justified in refusing to declare as a matter of law, that it was not evidence of that fact.

A common carrier is under a legal duty to supply patrons with cars to promptly move such freight as may be expected, according to the usual volume of busi-

ness offered for shipment, and if timely demands are made for cars, and a carrier fails to furnish them without having a lawful excuse for the failure, he is answerable for the proximate damage sustained by the shipper. It is a lawful excuse for the carrier to show that when the goods were offered there was a sudden, unusual and unexpected amount of business, and on account thereof, he was unable to handle the shipper's product without delay, but in fairness to the shipper, when that condition exists, the carrier must notify the shipper of the situation so that he may govern himself accordingly and acquiesce in the delay or seek some other line of transportation to get his property to market.

Under the evidence the judgment is for the right party, and finding no substantial error in the trial of the case, it will be affirmed. All concur.