Yazoo & Mississippi Valley Railroad Company *v.* Blum
Company.

[40 South. Rep., 748.]

1. Railroads. *Carriers. Equipment. Duty to furnish. Big crops.*

Where a railroad company had not provided equipment enough for
the prompt carriage of the cotton offered it for transportation
and produced under normal conditions along its lines for several
seasons preceding, it cannot, without having increased its equip-
ment commensurate with the usual crops, escape liability for a
failure to carry with reasonable promptness cotton received for
transportation during the next year, because there was a large
crop raised and the marketing of it created a greater demand for
cars than could have been foreseen.

2. Same. *Bill of lading. Obligations assumed. Defenses.*

Where a common carrier receives goods for transportation, issuing
the ordinary bill of lading therefor, it assumes an obligation to
promptly transport and deliver the same, from which it can be
relieved only by the act of God, a public enemy, the conduct of
the owner, or a special agreement limiting its duty.

3. Same. *Must provide sufficient equipment. Busy season.*

A carrier is legally bound to provide sufficient facilities for the
reasonably prompt transportation of all goods likely to be ten-
dered for carriage during the busiest season of the year, although
it be more than is necessary for the business during other seasons.

From the circuit court of Washington county.

Hon. A. McC. Kimbrough, Judge.

The Blum Company, a corporation, the appellee, was plain-
tiff in the court below; the railroad company, the appellant,
was defendant there. From a judgment in plaintiff's favor the
defendant appealed to the supreme court.

The declaration averred that the plaintiff at certain desig-
nated dates during the months of October and November, 1904,

delivered to defendant railroad company certain bales of cotton for shipment from the points on its line of road where the deliveries were made to the plaintiff at Greenville, Miss., and that the defendant issued its bills of lading and receipts for said cotton, thereby agreeing and undertaking to deliver said cotton to plaintiff, the consignee, at Greenville, within a reasonable time; that defendant failed to deliver the cotton to plaintiff, the consignee, within a reasonable time and by reason of defendant's said breach of duty plaintiff sustained a loss on account of the decline in the market value of cotton between the time the cotton should have been delivered and the time it was delivered, and by reason of defendant's said negligence plaintiff was greatly damaged, etc.

The defendant's special pleas, omitting formal parts, were as follows:

"2.    Whatever damage plaintiff may have sustained by the depreciation in value of the cotton shipped over defendant's line of railroad, owing to the delay in the handling and transportation of said cotton by this defendant, resulted from defendant not being provided with sufficient equipment and facilities for the handling of this cotton with any greater expedition than was used in handling it.   Defendant is a common carrier, operating a line of railroad from Memphis, in the state of Tennessee, to New Orleans, in the state of Louisiana, with various lateral branches, and defendant in the operation of said railroad is provided with engines, cars and other equipment necessary for the handling of freight over its line, ample and sufficient for the transportation with promptness and dispatch of all business ordinarily offering during eight or nine months of the year; but nearly all of defendant's line of railroad, main line and branches, runs through a cotton-growing country, in which cotton is almost the only agricultural product grown for market, and during the marketing season enormous quantities of this cotton are sought to be rushed to market within three

or four months, usually from the 1st of November to the 1st of February, and this rush creates a great pressure of business over defendant's line, to handle which with promptness and dispatch would require cars and equipment very much in excess of that necessary for the proper handling of the ordinary business of the company, and the equipment of this defendant is insufficient for handling cotton offered during this marketing season with the promptness and dispatch with which it is usually handled.

"Defendant avers that the shipments of cotton, delay in handling of which is complained of by plaintiff, were offered during the rush of business incident to the marketing of the cotton crop, and said cotton was handled with all diligence and expedition possible under the circumstances.

"3.    Whatever damage plaintiff may have sustained by the depreciation in value of the cotton shipped over defendant's railroad, owing to the delay in the handling and transportation of said cotton by this defendant, resulted from defendant not being provided with sufficient equipment and facilities for the handling of this cotton with any greater expedition than was used in handling it.

"Defendant is a common carrier, operating a line of railroad from Memphis, in the state of Tennessee, to New Orleans, in the state of Louisiana, with various lateral branches, and defendant in the operation of said railroad is provided with engines, cars and other equipment necessary for the handling of freight over its line, ample and sufficient for the transportation with promptness and dispatch of all business ordinarily offering during eight or nine months of the year, but nearly all of defendant's line of railroad, main line and branches, runs through a cotton-growing country, in which cotton is almost the only agricultural product grown for market, and during the marketing season, enormous quantities of this cotton are sought to be rushed to market within three or four months, usually

from the 1st of November to the 1st of February, and this rush creates a great pressure of business over defendant's line; and the cotton crop throughout this section grown during the year 1904, and marketed during the fall and winter of 1904 and spring of 1905, was much the largest cotton crop ever grown, and the marketing of it created a demand for cars, depot and terminal facilities which could not have been foreseen, anticipated or provided for; as a result of this, defendant's equipment, sufficient for the handling of its ordinary business quickly and promptly, was totally insufficient for the handling with expedition and dispatch all cotton offered it for transportation, but the equipment on hand was handled diligently and impartially and there was no negligence on the part of defendant in handling plaintiff's cotton, but the delay arose from the causes stated, said cotton being offered for transportation during this crowded business season, and it was handled with as much expedition and dispatch as it was possible under the circumstances."

The plaintiff's demurrer to said pleas assigned the following causes:

"First. It is not alleged in said special pleas that the plaintiff was informed by defendant at the time of the shipment of the cotton, or at any time, of the alleged lack of facilities to transport said cotton within a reasonable time, nor is it alleged that plaintiff knew of said alleged lack of facilities and assented thereto, but it appears from said pleas that said defendant received said cotton without notifying said plaintiff of the said alleged lack of facilities.

"Second. Because it is shown in said pleas that the defendant accepted said cotton for shipment, knowing its inability to ship within a reasonable time, and it is not alleged that plaintiff assented thereto.

"Third. Said special pleas show that defendant knew, or could reasonably have anticipated that the pressure of traffic during the time the cotton was delivered to be shipped, would

be greater than the facilities for transportation, and there is no allegation that any effort was made to provide therefor.

"Fourth. That the matters alleged in said pleas constitute no defense to plaintiff's declaration."

The demurrer was sustained to said pleas and, defendant not asking to plead further, judgment final for an agreed amount was rendered in plaintiff's favor; the plea of the general issue, plea No. 1, having been withdrawn.

*Mayes & Longstreet,* and *C. N. Burch,* for appellant.

The duty of a railroad company to prevent delay is of different character entirely from the duty to protect against loss by fire, robbery or the like.    The mere fact of delay, however apparently unreasonable, imposes no liability as a matter of law on the carrier.    Of course it is the duty of the carrier to transport with reasonable diligence, and consequently without unreasonable delay.    It would be profitless to make any argument, direct or indirect, against the soundness of this proposition. But there is no rule of law which declares what will or will not constitute unreasonable delay in all cases.    The rule is well stated in 4 Elliott on Railroads, sec. 1438, from which we quote as follows:

"There is no fixed rule of law determining what will or will not constitute an unreasonable delay in all cases.    The carrier is in all instances bound to use ordinary care and diligence to avoid unreasonable delay, but many elements must be taken into consideration in determining whether there was or was not unreasonable delay in the particular instance.    The fact that there was unusual delay does not always show a breach of duty. There may be cases where duty requires that a course should be pursued which will cause delay."

It is the usual rule that each case depends on its own circumstances.    And in the same authority, sec. 1482, it is further declared:

"A railroad carrier is liable for loss caused by unreasonable delay in transporting goods unless the delay is attributable to some cause which exonerates a common carrier from liability. It is the duty of a carrier to deliver goods within a reasonable time as well as to safely transport them, but the duty to prevent delay is of a different character from the duty to protect against loss by robbery or the like.   It has been held that where the facilities of the carrier for transportation were sufficient for ordinary purposes and demands, but were not sufficient because of the extraordinary quantity of goods offered for shipment, no action will lie for damages attributable to the delay caused by the extraordinary quantity of goods requiring shipment."

The general principles here declared to be correct have had express recognition by this honorable court in the case of *Vicksburg, etc., R. Co.* v. *Ragsdale,* 46 Miss., 459, where it is held that "The law does not attempt to fix what is reasonable time. Each case must be referred to its own peculiar circumstances, having regard to mode of conveyance, nature of goods, season of the year, character of the weather, and the ordinary facilities for transportation under the control of the carrier."

And we take from the body of the opinion by SIMRALL, Justice, as follows: "If a company have a reasonable equipment for all ordinary purposes and the delay be occasioned by an unusual press of business, but the carrying is done with reasonable expedition under the circumstances, then it is not responsible for the delay."   See, also, *Thompson* v. *Strickland,* 52 Miss., 574.

It may be asserted, therefore, that it is the declared law of this state that the question whether or not the delay was unreasonable is one to be determined by the facts and circumstances of the particular case.   The plea of the defendant company in this case asserted the very facts which the court holds are a complete exoneration of fault or liability for delay.   We beg the court will call to mind the fact known to all men, with common

knowledge, that the great Delta section of our state is one of the greatest cotton producing sections of the world.    The fertile lands yield more abundantly of the staple product than any other section of this country.    This cotton is gathered in the fall, within the limit of a few months, and usually rushed to market and sold by the producer or concentrated for holding in the larger towns.    In ordinary years even, if a railroad company were compelled to maintain an equipment sufficient to move every bale of cotton with instant dispatch, it would require an. equipment larger than the ordinary resources of the usual trans- portation company, and an equipment so large that for a greater part of the year much of it would necessarily remain idle and unproductive.

Plaintiff in this cause, resident of the Delta, actively engaged in cotton raising, had knowledge of the conditions attending the gathering, transportation and marketing of the product.    It is fairly chargeable as a matter of law with all the natural facts, and business conditions, of the environment.    No one shipper has a right to demand that the railroad company shall give him full and instant service, to the exclusion of all of its other patrons.    The obligation on the railroad company is to serve all alike, without discrimination; and this, the plea asserts, was done in the year of the world's record crop.

We invite the attention of the court to the case of *Galena, etc., R. Co.* v. *Vae,* 68 Am. Dec., 574, where the very proposition asserted in the plea here—that there was a tremendous crop in excess of the usual crop, marketed at a special season—was con- sidered by the court, and the railroad company was exonerated from fault by this fact—that it was an extraordinary occasion.

The special plea in this case asserts that there was a tremen- dous excess; the facts within common knowledge demonstrate that it was a crop over three million bales in excess of the aver- age crop, which is in the neighborhood of ten and one-half

million bales; this excess being in itself about thirty per cent over the average production.

The main point relied on by plaintiff in his demurrer is that it was not averred that he was informed of these conditions, and that he assented to the delay, or to the reasonable probability of delay. But in the case of *Peet* v. *Chicago, etc., R. R. Co.,* 91 Am. Dec., 446, the court, passing on this particular objection made in that cause by the plaintiff, says:

"We are also of the opinion that there is no rule of law requiring the notice mentioned in the third instruction. We have seen that the general rule is, that the common carrier is to transport and deliver the goods within a reasonable time; and what is a reasonable time is to be determined by all the circumstances of each particular case. If the shipper has not all the information he desires as to the circumstances or causes which will expedite or delay the delivery of goods, it would be more reasonable that he should make inquiry than to impose on the company or its agents the duty of giving unasked a statement of such circumstances."

*Shields & Boddie,* for appellee.

The issue raised by the demurrers to the special pleas of the appellant are as follows: Can a common carrier of goods receive freight for shipment, issue bills of lading therefor, and when delay occurs in the transportation and delivery of said freight by the carrier, due to the insufficient facilities in the way of cars possessed by it, and the shipper is damaged thereby, plead such lack of facilities as excuse for the delay, when at the time of shipment and issuance of the bills of lading, the carrier knew of its inability to transport and deliver the freight within a reasonable time, and knew that its lack of facilities would necessarily produce an unreasonable delay in the transportation and delivery of the freight, the carrier giving the shipper no notice of the delay that would necessarily result and the shipper in no way assenting thereto?

The authorities upon this point are *pro* and *con;* we think the better authorities answer these questions in the negative. 5 Am. & Eng. Ency. Law (2d ed.), 168, 169, and notes; 254–256, and notes, and cases there cited, and especially *Railway Co.* v. *Burns et al.,* 60 Ill., 284.

Another question raised by the demurrer.   The special pleas of appellant show that no effort was made by it to provide sufficient cars to transport the unusual amount of cotton which they would be called upon to carry in the fall of 1904, although the carrier knew its facilities were insufficient therefor.

TRULY, J., delivered the opinion of the court.

There are several reasons why the demurrer to the special pleas of the appellant was properly sustained.   The pleas admit that the delay in the handling and transportation of the appellee's cotton and the damage sustained "resulted from defendant not being provided with sufficient equipment and facilities for the handling of this cotton with greater expedition than was used in handling it."   It is also manifest from the allegations of the special pleas that the appellant does not possess the "engines, cars, and other equipment necessary for the handling of freight over its line, ample and sufficient for the transportation with promptness and dispatch of all business ordinarily offering at all times."   On the contrary, it is not even contended that the railroad company has the necessary equipment for promptly handling and transporting the cotton and other freight delivered to it during the busy season.   The appellant admits that during the marketing season, when enormous quantities of cotton are sought to be rushed to market, it creates a great pressure of business over the line, so that its equipment is totally insufficient for the handling of the business with expedition and dispatch.   It is true that appellant in its special plea does aver that during the season of 1904 and 1905, when an extra large cotton crop was grown, the "marketing of it created a demand for cars and depot

and terminal facilities which could not have been foreseen, antic-
ipated, or provided for." But this statement of a conclusion
cannot avail, in view of the admission that the railroad com-
pany was not provided with an equipment sufficient for the
prompt handling and transportation of the business annually
delivered to it during each recurring marketing season of the
average cotton crop, produced each year under normal condi-
tions.

In the *Ragsdale case*, 46 Miss., 478, the general rule is thus
stated: "If the company have a reasonable equipment for all
ordinary purposes, and the delay be occasioned by an unusual
press of business, but the carrying is done with reasonable expe-
dition under the circumstances, then it is not responsible for the
delay." We are not disposed to question the accuracy of the
general observation just quoted, though, of course, it is subject
to several modifications, as even a casual analysis will demon-
strate. But the rule quoted, even if absolutely accurate, is not
controlling in the instant case, for the reason that the facts dis-
closed by the special pleas show that the company does not pos-
sess "a reasonable equipment for all ordinary purposes." It
plainly appearing that the business of the appellant railroad
company is confined in a large degree to the handling of cotton,
and that it is known in advance there will be this annual press
of business during the marketing season, it is not averred or
intimated that any effort has been made to provide adequate
facilities and equipment for proper handling and transportation
of a normal and expected crop. Here is a condition of affairs
known, foreseen, and expected, of annual recurrence, and yet
no effort is made to provide for the emergencies which inevitably
arise with the occasion. The true rule applicable here is stated
in the *Ragsdale case* referred to as follows: "When property is
delivered to a carrier, the law implies a contract that it shall be
safely and within a reasonable time carried to and delivered, at
the place of destination. Nothing relieves from the obligation

to deliver, except the act 'of God, the public enemy, the act or conduct of the owner, or a special agreement limiting the common-law duty, if the time is not named. The implication arises, from the receipt of the property for transportation, that it shall be done with due dispatch or within a reasonable time." Gauged by this enunciation of the rule the liability of the appellant is plain.

But, if it were conceded that the production of an extra large crop was "an unusual press of business," within the meaning of that expression, and that it constituted an unforeseen emergency, though it manifestly appears that the carrier was not equipped with sufficient appliances and facilities to promptly handle any crop which might be produced, still that defense would not be available to the appellant in this case, for this reason: It appears from the averments in the pleadings that the appellant accepted the cotton for transportation and issued its bills of lading therefor.' Thereby it assumed by operation of law the obligation to promptly transport and deliver, and from this legal operation nothing can relieve the carrier, except "the act of God, the public enemy, the act or conduct of the owner, or a special agreement limiting its duty." None of these relieving causes intervened, and it does not appear that anything happened to change the condition of affairs which existed at the date of the acceptance of the cotton for prompt transportation and delivery. The delay was not caused by any unusual press of business subsequently arising or which could not be foreseen, for the same conditions obtained afterward as at the time of the acceptance of the freight. Knowing the difficulty of transportation, being informed of a then existing press of business, aware of the probability of an inability to promptly handle and transport freight, a carrier cannot accept and receipt for freight for transportation and then plead in excuse and extenuation of its delay a condition of affairs of which it was at the time advised. This consideration prevents the appellant denying liability for delay in trans-

portation.    It is this potent fact which plainly distinguishes the instant case from the *Ragsdale case* relied on.    In the *Ragsdale case* the delivery was prevented by a sudden and disastrous condition of ferries and floods, against which the carrier was powerless to protect itself.    In that case, also, the shipper was advised, at the time of the acceptance of the freight, of the difficulties attending the shipment and delay which would probably ensue;  and yet in that case it is worthy of observation that this court did not hold, even under the special circumstances set out, that the carrier was not liable for damages for the delay in forwarding the freight.    At the time when this cotton was delivered to the carrier for transportation, the annual press of business, which it confessedly was unable to promptly handle, and for the transportation of which it had taken no steps to properly equip itself, was then confronting it.    The carrier was aware at the time of the tender of the freight of the probability of delay in handling the shipment, but notwithstanding this it accepted the cotton, issued its bills of lading, and thereby assumed its legal liability for damages for failure or delay in transportation and delivery.    It did not advise the shipper of the probability of delay, and thus afforded him no opportunity of selecting some other method, if one might be had, of transporting his freight or of disposing of it at the place of shipment.    Under such circumstances to hold that the carrier was not liable for the damages admittedly caused by the delay in transporting the freight would be tantamount to saying that shippers of this country are remediless at the hands of the court and rest absolutely at the mercy of the carriers.

If it can be said that the carrier, which only has necessary equipment to handle its ordinary business for eight or nine months of the year, when business is dull and limited, has complied with the law, why may not the same excuse be pleaded by the carrier which has necessary equipment to handle its business only in the dullest single month of the year?    And thus the law

which imposes liability upon the carrier for failure to promptly handle and deliver freight consigned to its care becomes absolutely ineffective.   Many privileges are granted the common carriers of this state by the law; but certain reciprocal obligations are imposed, and amongst those no duty is more important to the commercial world at large than that which requires the prompt transportation of freight and which imposes liability for any failure in that regard.   The true rule in this matter, in our opinion, and we quote it for the purpose of approving it, is found in 5 Am. & Eng. Ency. Law, 160, 167, 169, 256, as follows: "The duty of carriers embraces, not only the duty to transport goods accepted by them, but to do so promptly and within a reasonable time.   If there is any unreasonable delay, the carrier remains liable as insurer for the safety of the goods, and is also responsible for whatever damage may result to the shipper as a proximate consequence of the delay.   But in the case of railroad and similar companies, endowed with special and unusual powers, with express view to their rendering to the public a freight and passenger service adequate to the needs of the country through which their lines pass, the law imposes the obligation to have and to furnish sufficient facilities for the reasonably prompt transportation of goods tendered for carriage, and they are liable for a failure to transport promptly, whether the failure is due to a want of facilities or to a captious refusal to carry. If it accepts goods after knowledge of its inability to transport them it is liable notwithstanding, unless the shipper consented to the delay.   Where it appears that the carrier has reasonable facilities for the transportation of goods under ordinary conditions of business, and furnishes them all for the use of shippers, the fact of an unusual and unexpected press of business will excuse a delay in transportation, provided the shipper is informed of the fact at the time of shipment or as soon thereafter as it is known.   But such a fact constitutes no excuse when the carrier, with full knowledge of it, accepts goods for transporta-

tion without informing the shipper, or where it appears that the carrier was derelict in his duty to have and provide proper facilities for transportation." Tested by the rules thus announced, which are consonant with justice and absolutely necessary for the protection of the commercial world, it plainly appears that the appellant in this case was liable for the damages caused by its delay in transporting the cotton delivered to it.

Inasmuch as the amount of recovery is agreed upon in the event the carrier's liability be established, the judgment is

*Affirmed.*