KELLY DILLENDER, Respondent, v. ST. LOUIS &
SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. CARRIERS: Failure to Furnish Cars: Extraordinary Demand:
Damages: Question for Jury. In a suit against a railroad company for failure to furnish cars for the shipment of logs, the
defense was that an unusual pressure of business on defendant's road and an extraordinary demand for cars prevented defendant from supplying all the cars ordered by plaintiff. *Held*,
under the evidence that whether there was a sudden and unusual increase in business and demand for cars so as to release
defendant from its liability for failure to furnish cars for plaintiff, was a question for the jury.

2. ———: ———: Damages: Excessive Verdict. In a suit for
damages against a railroad company for failure to furnish cars
for shipments of logs a verdict for $500 was held not excessive.

3. ———: Duty to Furnish Cars: Extraordinary Demand. Railroad companies are expected to be prepared with the equipment
necessary to handle the average traffic over their lines and such
an increase as would be expected by managers of experience,
but the carrier need not be ready to handle any accession of
business, however great, which some unforeseeable condition
may cause, and in case an extraordinary traffic occurs and
there is a congestion of freight in consequence, the carrier must
distribute its cars at the various stations in proportion to their
needs.

4. ———: ———: ———: Accepting Shipment: Notice to Shipper.
Where the carrier has reasonable equipment for the transportation of goods under ordinary conditions of business, an unusual
and unexpected press of business will excuse the delay in shipment, provided the shipper is informed of the fact at the time
the goods are presented for shipment or as soon thereafter
as it is known.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C.
Riley*, Judge.

AFFIRMED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1)   Defendant was not liable to plaintiff under the issues in this case, as it had a lawful excuse for failing to furnish the cars for plaintiff, and the court should have directed the jury to find for the defendant on the uncontradicted evidence.   Hoffman Co. v. Railroad, 119 Mo. App. 501; Ballentine v. Railroad, 40 Mo. 491; Dawson v. Railroad, 79 Mo. 296; Faulkner v. Railroad, 51 Mo. 311; State ex rel. v. Railroad, 99 N. W. 309; State ex rel. v. Railroad, 101 N. W. 23; Strough v. Railroad, 87 N. Y. S. 30; 4 Elliott on Railroads (1 Ed.), 2287; Moore on Carriers, 105.

*Ward & Collins* for respondent.

(1)   A mere delivery of goods to the carrier with instructions to ship them and the carrier accepts them, is a sufficient consideration for the undertaking to carry them safely.   5 Am. and Eng. Ency. Law, 160; McCauley v. Davis, 10 Minn. 418; R. S. 1899, sec. 1082; Rankin v. Railroad, 55 Mo. 167.   (2)   Respondent made out a prima facie case when he showed delivery of the logs to appellant and appellant's failure to deliver to consignee.   Grier v. Railroad, 108 Mo. App. 565.   (3) After the reception of the goods, it is too late to look to the rolling stock, etc.   They must do this before the reception of the goods, and if there be an unusual influx of business beyond their capacity, they must decline an offer for shipment of goods without incurring a liability. Guin v. Railroad, 20 Mo. App. 459; Faulkner v. Railroad, 51 Mo. 313; Pruitt v. Railroad, 69 Mo. 527.   (4) It is the carrier's duty to furnish sufficient facilities for the reasonably prompt transportation of the goods tendered for carriage, and they are liable for the failure to transport promptly, whether the failure is due to a want of facilities or to a captious refusal to carry.   Railroad v. Burrows, 33 Mich. 6; Branch v. Railroad, 77 N. C. 347; Swap v. Union Line Co., 13 Mo. App. 159.

GRAY, J.—This action was instituted in Pemiscot
county for twenty-five hundred dollars damages which
plaintiff claims he sustained by the failure of defendant
to furnish him cars to transport freight which he deliv-
ered to the defendant. The petition charges that plaintiff
was engaged in the business of shipping logs and timber
from Holland, Mo., to Cape Girardeau, Mo., and that in
the year 1907 he had contracts with the Indiana Lumber
Company and one George McBride to deliver to them
within a specified time, all the timber located upon cer-
tain lands in Pemiscot county, and that these facts were
known to the defendant; that plaintiff delivered to
the defendant, at the town of Holland, logs to
be shipped to Cape Girardeau; that it was the duty of
the defendant to furnish the plaintiff with cars to
carry and transport the logs; that plaintiff notified de-
fendant orally and in writing that said logs were ready
for shipment, and that the same were becoming dam-
aged, and requested the defendant on divers times be-
tween April and December, 1907, to furnish him cars
for the shipment of said logs; that defendant, in disre-
gard of its duties as a common carrier, neglected and
refused to furnish plaintiff said cars, and that by reason
of defendant's negligence he was prohibited from car-
rying out the said contracts, and the logs so delivered to
the defendant to be shipped became mildewed and dam-
aged; that by reason of the premises, plaintiff had been
damaged in the sum of $2500, for which he asked judg-
ment.

Besides a general denial, the answer alleged that
defendant furnished plaintiff all the cars he needed to
transact the average and ordinary business at the sta-
tion of Holland and consistent with defendant's duty to
its other patrons; that if plaintiff was prevented from
making timely shipments of his logs, it was on account
of the unusual pressure of business on defendant's rail-
road which prevented defendant from supplying cars at
different stations necessary to meet the emergency which

was unusual and extraordinary; that defendant made a just distribution of cars at plaintiff's station with reference to defendant's duty as a common carrier to all its patrons. The reply denied the new matter in the answer.

The cause was tried before a jury on March 5, 1908, resulting in a verdict in favor of the plaintiff in the sum of five hundred dollars, and defendant appealed from the judgment rendered on that verdict.

The evidence discloses that respondent was engaged in shipping logs, as alleged in his petition; that beginning with the month of May, 1907, he repeatedly made orders on defendant's agent at Holland for cars to ship his logs, and that he was unable to get the cars. Respondent was cutting the timber and delivering the logs in the yards at Holland, and had a contract, as alleged in his petition, for all the logs which he could put on the cars at Holland; that from 4000 to 8000 feet of logs constituted a carload; that on the first day of June, 1907, he had about 75,000 feet of logs in the yard which he had been unable to get cars to ship; by July 1st, 118,000 feet; August 1st, 136,000 feet; September 1st, about 207,000 feet, and by October 1st, over 300,000 feet of logs were lying in the yards which had not been shipped because cars could not be obtained. In the month of March, 1907, he applied for and was furnished twenty cars; in April twenty-three cars; in May he applied for cars daily, but was furnished only eleven, and in the month of June, he was furnished twenty-eight cars; July forty cars; August thirty-five cars; September thirty-nine cars; October five cars, and November twenty-four cars. He also offered testimony tending to prove that logs permitted to remain on the ground would begin to be damaged after about thirty days, and that his logs were worm eaten, mildewed and damaged by reason of the fact that they were left in the yards because of the failure of defendant to furnish cars. The logs were sold under contract f. o. b. cars at Holland. All of the logs were af-

terwards shipped except about 4000 feet, and plaintiff assigns as his reason for not shipping the 4000 feet that the logs were worthless on account of having remained in the yards so long.

When plaintiff's logs were shipped, they were measured or scaled, and when delivered at destination, they were also measured and scaled, and there was a difference of about 50,000 feet between the measurement at Holland and destination, and this was caused by the purchaser's deducting for the damaged logs.

The defendant offered testimony tending to prove that beginning on May, 1907, and lasting until December of that year, there was an unusual, sudden and unexpected demand for cars of the character used for shipping plaintiff's property, and on account thereof, defendant was unable to procure the cars. On the other hand the plaintiff offered testimony tending to prove that there had been a gradual increase in business, and that in the years of 1905 and 1906, there also had been a shortage of cars, and while there was an increase in the demand in 1907 over previous years, it was not a sudden and unexpected increase, but that defendant, by reason of the fact that there had been a shortage in previous years, should have been prepared to furnish more cars. In addition to this the testimony does show that when plaintiff commenced to notify the defendant in writing that he must have the cars, and if he did not get them, charges would be made, the defendant supplied him with all the cars requested.

We have come to the conclusion whether there was a sudden and unusual increase of business and demand for cars over the appellant's road so as to release defendant from its liability for failure to furnish the cars, was a question for the jury.

The St. Louis Court of Appeals has very recently delivered an opinion in a case very similar to this one. [Shoptaugh v. R. R. Co., 126 S. W. 752.] Judge GOODE delivered the opinion of the court and said: "Taking

up the appeal on the merits, we hold it would have been a good defense if an extraordinary increase of business on defendant's line, which could not have been anticipated and provided for by using judgment and diligence, had prevented defendant from furnishing the cars. Railroad companies are expected to be prepared with an equipment necessary to handle the average traffic over their lines and such an increase as would be expected by managers of experience, for the volume of traffic will vary with the seasons and general business conditions. These contingencies ought to be provided for, and the law requires them to be; but a railroad carrier need not be ready to handle any accession of business, however great, which some unforeseeable condition may cause; and, in case an extraordinary traffic occurs and consequent congestion of freight, the carrier must distribute its cars at the various stations in proportion to their needs."

We believe the above is a fair and correct declaration of the law on the subject, and supported by the great weight of authority.

According to the testimony of plaintiff and the testimony of the defendant's agent at Holland, there was not a sudden and extraordinary demand for cars. A shortage had existed for more than two years previous to the time plaintiff complains of. When plaintiff was demanding his cars from time to time of the defendant's agent, there was no notice given to him that the defendant would be unable to furnish the cars, but he was permitted to bring the logs to the station for shipment with the implied understanding at least that cars would be furnished.

In the recent case of Yazoo M. & V. R. Co. v. Blum, 88 Miss. 180, 40 So. 748, 10 L. R. A. (N. S.) 432, the court holds that a carrier whose equipment is not adequate to handle the average business tendered it, cannot avoid liability for failure promptly to transport freight tendered on the ground that the demand for transporta-

tion was at the time so great it could not have been foreseen, anticipated or provided for.

There is not a word of testimony in this case that the defendant notified plaintiff that it would be unable to handle his logs owing to the great increase of business. And the rule seems to be that if the carrier accepts the goods after knowledge of its inability to transport them, it is liable, unless the shipper consents to the delay. When the carrier has reasonable equipment for the transportation of goods under ordinary conditions of business, the fact of an unusual and unexpected press of business will excuse the delay, provided the shipper is informed of the fact at the time of the shipment, or as soon thereafter as it is known. But such a fact constitutes no excuse when the carrier, with full knowledge of it, accepts goods for transportation without informing the shipper of the true situation. [5 Am. and Eng. Ency. Law (2 Ed.), pp. 160, 167, 169 and 256; Yazoo R. R. Co. v. Blum, supra; Toledo W. & W. R. R. Co. v. Lockart, 71 Ill. 627; Russell Grain Co. v. Railroad, 114 Mo. App. 488, 89 S. W. 908; Texas & N. R. R. Co. v. Kolp, 88 S. W. 417; Faulkner v. Railroad, 51 Mo. 311; Pruitt v. Railroad, 62 Mo. 527.]

The court gave all the declarations of law asked by the defendant except a demurrer to the evidence, and when all the instructions were read together, the issues were fairly submitted.

The plaintiff recovered a judgment of five hundred dollars, and it is claimed that this judgment is excessive. Plaintiff's testimony shows that he lost 50,000 feet of logs by reason of the delay; that 25,000 feet of the logs were worth twelve dollars per thousand; that sixty per cent of the other 25,000 feet were worth seven dollars per thousand, and the remainder ten dollars per thousand. The logs were shipped to Cape Girardeau and there rejected. In addition to the above, there were

about 4000 feet of logs left in the yard which plaintiff claimed were worthless. There was no testimony to the contrary. When the above values are computed, it is plainly seen that the judgment is not excessive.

The authorities bearing on the issues of this case are collected in the note to Yazoo M. & V. R. Co. v. Blum, 10 L. R. A. (N. S.) 432, and we believe the decision of the St. Louis Court of Appeals in the Shoptaugh case is a correct declaration of the law on the subject, as will be shown by an examination of the long list of authorities reviewed in that note, and being of this opinion, and the facts in this case and the Shoptaugh case being practically the same, it is our duty to affirm the judgment, and the same is accordingly done. All concur.